UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

PAUL REYES,

Plaintiff,

v.

SGT. GALLAND, M. RUSTAND and JOHN DOES 1-6,

Defendants.

Civil No. 00-1484 (DWF/JGL)

**REPORT AND RECOMMENDATION**

Paul Reyes, Plaintiff, pro se

John W. Riches II, Attorney for Defendant Sgt. Galland[1]

JONATHAN LEBEDOFF, United States Magistrate Judge

This matter comes before the Court on the Court's own motion pursuant to Fed. R. Civ. P. 12(h)(3), for the purpose of considering whether Plaintiff's action must be dismissed for lack of subject matter jurisdiction.[2] For the reasons discussed below, the Court finds that the District Court does not have subject matter jurisdiction, and that Plaintiff's claims cannot properly be entertained. It will therefore be recommended that this action be dismissed with prejudice.

[1] Sgt. Galland is the only defendant who was served and entered an appearance in this matter.

[2] Fed. R. Civ. P. 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." See also State of Missouri ex rel. Missouri Highway and Transportation Commission v. Cuffley, 112 F.3d 1332, 1334 (8th Cir. 1997) ("subject-matter jurisdiction cannot be waived, and it is our duty to raise the issue sua sponte").

FEB 0 1 2001
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## I. BACKGROUND

Plaintiff is a prisoner at the Prairie Correctional Facility, ("PCF"), a privately operated prison located in Appleton, Minnesota. He is seeking relief under 42 U.S.C. § 1983 for alleged violations of his federal constitutional rights. His claims are based on an incident that allegedly occurred at PCF approximately two years ago.

According to the complaint, (Docket No. 1), a team of six to eight prison officials, led by Defendant Galland, entered Plaintiff's cell at PCF at approximately 3:00 a.m. on February 8, 1999. They woke up Plaintiff, told him not to move, and handcuffed him with his arms behind his back. Plaintiff was then lifted up by his arms, "slammed into the edge of the metal-framed wall-mounted lower bunk" and then "slammed into the concrete floor." He later learned that the guards who had entered his cell were searching for contraband. Apparently, however, no contraband was found.

Immediately after the incident, a prison nurse talked to Plaintiff and asked him if he needed medical attention. Plaintiff declined the nurse's offer, allegedly because he was too tired and dazed to realize that he had, in fact, been injured during the incident. Later, however, Plaintiff did seek medical care, complaining of swelling and bruising, unspecified "neck and back injuries" and "shoulder dysfunction."

Plaintiff filed a series of written grievances at PCF, complaining about his treatment during the search of his cell, and seeking relief for the injuries that he allegedly sustained. His claims were rejected, however, at each level of the prison grievance process.

After exhausting his administrative remedies, Plaintiff filed a civil lawsuit in the state district court for Swift County, Minnesota. In that action, he alleged that Defendant

Galland and other PCF officials violated his federal constitutional rights by using excessive force when they searched his cell. Plaintiff did not pay the filing fee for his state court action, but instead applied for leave to proceed in forma pauperis, ("IFP").

Plaintiff's IFP application prompted the state court to review his complaint, sua sponte, for the purpose of determining whether he had pleaded an actionable, non-frivolous claim. By order dated April 29, 1999, the state court denied Plaintiff's IFP application and dismissed his action with prejudice. (Affidavit of Paul Reyes, [Docket No. 2], Exhibit 8.) The state district court concluded that –

> "Plaintiff has done nothing more than allege that he was subject to a routine prison security procedure. This treatment is not shocking given plaintiff's status as a prisoner. There is no basis in law under which the Court should intervene in this case."

(Id.)

Following the dismissal of his state court action, Plaintiff filed an appeal with the Minnesota Court of Appeals. In an unpublished decision, (with one judge dissenting), the state appellate court affirmed the trial court's dismissal of Plaintiff's claims. (Id., Exhibit 9.) The Court of Appeals agreed that Plaintiff had failed to state a viable excessive force claim, noting that his "denial of injury at the time of the shakedown shows... that the force used by the corrections officers was de minimis and is not repugnant to the conscience of mankind." (Id.) Plaintiff filed a petition in the Minnesota Supreme Court seeking review of the Court of Appeals' decision, but that request was summarily denied by order dated May 16, 2000. (Id., Exhibit 10.)

On June 19, 2000, Plaintiff commenced his present § 1983 civil rights action. He is once again seeking relief from Defendant Galland and other PCF prison officials for allegedly violating his federal constitutional rights during the cell search conducted on February 8, 1999. He claims that he was injured as a result of "unprovoked," "unwarranted" and "unnecessary" use of physical force against him. Plaintiff is asking for a declaratory judgment holding that Defendants conspired to cause him bodily injury in violation of his constitutional rights. He is also demanding an award of compensatory and punitive damages.

## II. DISCUSSION

Because Plaintiff's current claims have already been considered and adjudicated by the Minnesota state courts, the Court finds that this action is barred by the Rooker-Feldman doctrine.

> "The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476... (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416... (1923). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. See 28 U.S.C. § 1257; Feldman, 460 U.S. at 486.... Because the Rooker-Feldman rule is jurisdictional, it may be... raised sua sponte. See Doctor's Associates, Inc. v. Distajo, 107 F.3d 126, 137 (2d Cir.1997) [cert. denied, 522 U.S. 948 (1997)]....
>
> The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. See Feldman, 460 U.S. at 482 n. 16...; Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir.1999); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir.1997)."

Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000), pet. for cert. filed, Dec. 18, 2000, (No. 00-1023).

Simply stated, "[u]nder the Rooker-Feldman doctrine, lower federal courts lack jurisdiction to engage in appellate review of state court determinations." In re Goetzman, 91 F.3d 1173, 1177 (8th Cir.), cert. denied, 519 U.S. 1042 (1996).

The Rooker-Feldman doctrine is clearly applicable here. The claims that Plaintiff is advancing in this case are not just "inextricably intertwined" with his earlier state court claims; it would be more accurate to say that the two sets of claims are wholly indistinguishable. Both actions arose out of the same incident; both actions have been brought against the same Defendants; both actions are based on allegations of excessive use of force; and both actions seek relief for alleged violations of Plaintiff's federal constitutional rights.[3]

---

[3] The last two paragraphs of Plaintiff's complaint include references to 42 U.S.C. §§ 1985 and 1986 and "Plaintiff's membership in a protected Hawaiian racial class." The present record does not disclose whether similar references were included in his state court action, or whether Plaintiff is now trying to add some new cause(s) of action that may not have been explicitly identified in his state court case. However, even if Plaintiff is attempting to advance a new claim here, that would not change the Court's appraisal of this matter for two reasons. First, Plaintiff has failed to state an actionable claim under 42 U.S.C. § 1985 or § 1986, because he has pleaded no facts to support such a claim. At most, he has pleaded a conclusory allegation that Defendants entered into a conspiracy to deprive him of his constitutional rights because he is Hawaiian. Because there are no specific factual allegations to support that contention, Plaintiff has failed to plead an actionable conspiracy claim. Snelling v. Westhoff, 972 F.2d 199, 200-201 (8th Cir. 1992) (per curiam), ("conspiracy claim requires allegations of specific facts showing 'meeting of the minds' among alleged conspirators"), cert. denied, 506 U.S. 1053 (1993), citing Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988); see also Martin v. Sargent, 780 F.2d 1334, 1337 (1985) (while federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"). Furthermore, the Rooker-Feldman doctrine bars not only the particular claims that actually were litigated in a prior state action, but also other

It could hardly be more obvious that Plaintiff is asking this federal district court to review and overrule the state court decisions that dismissed his prior state court action. The only federal court that could do that, however, is the United States Supreme Court. Rooker-Feldman prohibits the Minnesota federal district court from re-examining a matter that has been fully adjudicated by a Minnesota state court, (except in habeas corpus proceedings). Thus, the Court concludes that Plaintiff's present lawsuit is barred by the Rooker-Feldman doctrine, and it will be recommended that this action be summarily dismissed for lack of subject matter jurisdiction.

**III. PENDING MOTIONS**

There are six motions currently pending in this case. Plaintiff has filed a motion for default judgment, (Docket No. 11), a motion to strike the affidavit of John W. Riches II, (Docket No. 14), and a motion for an order directing the marshal to effect service of process on Defendant M. Rustand, (Docket No. 31). Defendant Galland has filed a motion for summary judgment, (Docket No. 7), a motion to dismiss, (Docket No. 19), and a motion seeking a protective order against discovery, (Docket No. 22). In light of the Court's determination that this action must be dismissed for lack of subject matter jurisdiction, none of the pending motions in this action can properly be entertained or addressed on the merits. It will therefore be recommended that all pending motions be summarily denied.

---

related claims that could have been brought in the prior action. Goetzman, 91 F.3d at 1178 ("the Rooker-Feldman doctrine, like the doctrine of [claim] preclusion, applies to claims which were not brought before the state court but could have been raised in the state court action"). Because Plaintiff's § 1985 and § 1986 conspiracy claims are inextricably interwoven with his excessive force claims, and those conspiracy claims could have been raised in his prior state court action, they are also barred by Rooker-Feldman.

Finally, notwithstanding the dismissal of this action, Plaintiff should remain liable for the unpaid balance of the $150 filing fee.[4] Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2).

## IV. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

(1) Plaintiff's motion for default judgment, (Docket No. 11), be DENIED;

(2) Plaintiff's motion to strike the affidavit of John W. Riches II, (Docket No. 14), be DENIED;

(3) Plaintiff's motion for an order directing the marshal to serve Defendant M. Rustand, (Docket No. 31), be DENIED;

(4) Defendant Galland's motion for summary judgment, (Docket No. 7), be DENIED;

(5) Defendant Galland's motion to dismiss, (Docket No. 19), be DENIED;

---

[4] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

(6) Defendant Galland's motion for protective order, (Docket No. 22), be DENIED;

(7) This action be SUMMARILY DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction; and

(8) Plaintiff be required to pay the unpaid balance of the filing fee for this action pursuant to 28 U.S.C. § 1915(b)(2).

Dated: February 1, 2001

JONATHAN LEBEDOFF
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by February 20, 2001, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.